## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ELIZABETH RIVERA, | : | CIVIL ACTION |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | No. 15-6590 |
|  | : |  |
| DEALER FUNDING, LLC, COLLATERAL ADJUSTMENT CORPORATION, and CONSOLIDATED ASSET RECOVERY SYSTEMS INC., | : : : : | |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                          **April 15, 2016**

Presently before this Court is Defendant, Collateral Adjustment Corporation's ("Defendant CAC") Motion to Dismiss and Strike Portions of Plaintiff's Complaint, and the Response in Opposition by Plaintiff, Elizabeth Rivera ("Plaintiff").  For the reasons set forth below, this Motion is granted.

## I.      BACKGROUND

On December 11, 2015, Plaintiff initiated this lawsuit by filing a Complaint against Defendant CAC, Consolidated Asset Recovery Systems Inc. ("Defendant CARS"), and Dealer Funded, LLC ("Defendant DFL")(collectively "Defendants").  (Doc. No. 1.)  The Complaint is comprised of the following four counts: Count I alleges violations of the Fair Debt Collection Practices Act ("FDCPA") at 15 U.S.C. § 1692 et seq. against Defendant CAC and Defendant CARS, Count II alleges violations of the Uniform Commercial Code ("U.C.C.") at 13 Pa. C.S.A. § 9607 et seq. and the Pennsylvania Motor Vehicles Sales Finance Act ("MVSFA") at 69 P.S.

§ 615 et seq. against all Defendants, Count III alleges violations of the Fair Credit Extension

Uniformity Act ("FCEUA") at 73 P.S. § 2270.1 et seq. and the Pennsylvania Unfair Trade

Practices and Consumer Protection Law ("UTPCPL") at 73 P.S. § 201-1 et seq. against all

Defendants, and Count IV alleges negligence claims against all Defendants.  (Id.)

Defendant DFL is a Georgia Corporation licensed to do business in Philadelphia as a

buyer of used car credit purchase agreements.  (Compl. ¶ 4.)  Defendant CARS is a corporation

regularly engaged in the business of debt collection and automobile repossession.  (Id. ¶ 5.)

Defendant CAC is a Pennsylvania Corporation also engaged in the business of automobile

repossession.  (Id. ¶ 6.)  According to Plaintiff, Defendant CARS and Defendant CAC were hired

by and acted as Defendant DFL's agents.

The facts of this case begin on or about October 2014, when Plaintiff entered into a Retail

Installment Sales Contract ("RISC") for the financed purchase of a 2006 BMW X3 ("subject

car").  (Id. ¶ 10.)  Plaintiff was in default on her loan, and on or about September 22, 2015, at the

direction of Defendant DFL, Defendant CAC came to her residence and repossessed the subject

vehicle.  (Id. ¶¶ 11-12.)  On or about September 29, 2015, Plaintiff went to the New Jersey

Manheim lot to redeem her vehicle.  (Id. ¶ 13.)  Plaintiff alleges that after retrieving the vehicle

and inspecting it, she noticed that personal property was removed, trash was littered throughout

the vehicle, and that the vehicle had been damaged due to being improperly towed by Defendant

CAC.  (Id. ¶ 14.)

Presently before this Court is Defendant CAC's Motion to Dismiss the Compliant under

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") for failing to attach a

necessary writing upon which her entire claim is based.  In the alternative, Defendant CAC

moves this Court under Rules 12(b)(6) and12(f) of the Federal Rules of Civil Procedure for an

Order dismissing Counts I, II, and III of Plaintiff's Complaint for failure to state a claim, and striking paragraphs 41 and 49, as well as sections A, B, D, E, and G of Plaintiff's Prayer for Relief.  In her proposed order to this Court, Plaintiff has agreed to the following: dismissal of Count III; paragraphs 41 and 49 are stricken from the Complaint; Section A's references to the UTPCPL and FCEUA are stricken; and Section G of Plaintiff's Prayer for Relief is stricken as to Defendant CAC.

## II.   <u>STANDARD OF REVIEW</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993).  Pursuant to Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has failed to set forth a claim from which relief may be granted.  Fed. R. Civ. P. 12(b)(6); <u>see also</u> <u>Lucas v. City of Phila.</u>, No. 11-4376, 2012 WL 1555430, at *2 (E.D. Pa. May 2, 2012) (citing <u>Hedges v. U.S.</u>, 404 F.3d 744, 750 (3d Cir. 2005)).  In evaluating a motion to dismiss, the court must view any reasonable inferences from the factual allegations in a light most favorable to the plaintiff.  <u>Buck v. Hamilton Twp. Sch. Dist.</u>, 452 F.3d 256, 260 (3d Cir. 2002).

The United States Supreme Court ("Supreme Court") set forth in <u>Twombly</u>, and further defined in <u>Iqbal</u>, a two-part test to determine whether to grant or deny a motion to dismiss.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  The United States Court of Appeals for the Third Circuit ("Third Circuit") has noted that these cases signify the progression from liberal pleading requirements to more "exacting scrutiny" of the complaint.  <u>Wilson v. City of Phila.</u>, 415 F. Appx. 434, 436 (3d Cir. 2011).

Initially, the court must ascertain whether the complaint is supported by well-pleaded factual allegations.  <u>Iqbal</u>, 556 U.S. at 679.  "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." Twombly, 550 U.S. at 555. Conclusions of law can serve as the foundation of a complaint, but to survive dismissal they must be supported by factual allegations. Iqbal, 556 U.S. at 679. These factual allegations must be explicated sufficiently to provide a defendant the type of notice that is contemplated by Rule 8. See Fed. R. Civ. P. 8(a)(2) (requiring a short and plain statement of the claim showing that the pleader is entitled to relief); see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Where there are well-pleaded facts, courts must assume their truthfulness. Iqbal, 556 U.S. at 679.

Upon a finding of a well-pleaded complaint, the court must then determine whether these allegations "plausibly" give rise to an entitlement to relief. Id. at 679. This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Plausibility compels the pleadings to contain enough factual content to allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. 544 at 570). This is not a probability requirement; rather plausibility necessitates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" Id. (quoting Twombly, 550 U.S. at 557). In other words, a complaint must not only allege entitlement to relief, but must demonstrate such entitlement with sufficient facts to nudge the claim "across the line from conceivable to plausible." Id. at 683; see also Holmes v. Gates, 403 F. App'x 670, 673 (3d Cir. 2010).

III.    <u>DISCUSSION</u>

**A.  Failure to Attach a Necessary Writing**

We do not agree with Defendant CAC's first contention that Plaintiff's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to attach the RISC. Federal Rule of Civil Procedure 8(a) "permits a plaintiff to assert the existence of an express, written contract either by setting it forth verbatim in the complaint, or the plaintiff may 'attach a copy as an exhibit, or plead it according to its legal effect.'" <u>Pierce v. Montgomery Cnty. Opportunity Bd., Inc.</u>, 884 F. Supp. 965, 970 (E.D. Pa. 1995) (quoting 5 Charles A. Wright, Arthur R. Miller, Federal Practice and Procedure § 1235 at 272–273 (1990)).  A plaintiff is not required to attach the subject contract to the complaint or plead its terms verbatim in order to state a claim.  <u>Mayes v. Local 106, Int'l Union of Operating Eng'rs</u>, 739 F. Supp. 744, 748 (N.D.N.Y. 1990); <u>see</u> <u>also</u> <u>Transp. Int'l Pool, Inc. v. Ross Stores, Inc.</u>, No. 06–1812, 2009 WL 1033601, at *3 (E.D. Pa. Apr. 15, 2009) ("[T]he complaint does not need to resort to formulaic recitation of the elements of the alleged contract; rather, the complaint must allege facts sufficient to place the defendant on notice of the contract claim in such a way that the defendant can reasonably respond.").

Here, Plaintiff has alleged that the RISC exists, that the agreement was between her and Defendant DFL, and that it involved the subject car.  (Compl. ¶¶ 10, 17.)  Most importantly, Plaintiff admits that she was in default on her RISC at the time of the repossession and makes no argument that it was not a valid agreement.  (Compl. ¶ 12.)  Furthermore, Plaintiff cannot locate a copy of the contract.  (Pl.'s Resp. to Def.'s Mot. to Dismiss Compl. at 1.)   In light of the liberal notice pleading standards embodied in Rule (8)(a), the Court finds that Plaintiff has sufficiently alleged facts to place Defendant CAC on notice of the RISC such that it can

reasonably respond.[1]  We may now proceed in evaluating Defendant CAC's additional

contentions.

### B.  Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6)

#### 1.  *Violations of the Fair Debt Collection Practices Act*[2]

Defendant CAC argues that Count I of Plaintiff's Complaint regarding violations of the

FDCPA, 15 U.S.C. § 1692, et seq. should be dismissed under Rule 12(b)(6) for several reasons

including: (1) a repossession agency is not a "debt collector" for FDCPA purposes; (2) Plaintiff

admitted she defaulted on her loan; therefore, Defendant CAC had a right of possession and did

not violate § 1692f(6)(A) of the FDCPA as a matter of law; (3) and no facts were pleaded that

support a finding under § 1692f(6)(B), § 1692f(6)(C), or § 1692d.  (Def.'s Mot. to Dismiss

Compl. at 4-6.)

We do find that a repossession agency is a "debt collector" for FDCPA purposes, but it is

only subject to § 1692(f)(6) and not the remaining provisions of the statute.  Under the FDCPA,

"[f]or the purpose of section 1692f(6) of this title, such term [debt collector] also includes any

person who uses any instrumentality of interstate commerce or the mails in any business the

principal purpose of which is the enforcement of security interests."  15 U.S.C. § 1692a(6).  The

statute then goes on to list what the term debt collector does not include for purposes of the

FDCPA.  Id.  The six classes of excluded debt collectors listed did not specifically state

repossession agencies.  Id.

---

[1] Although not expressly stated, Defendant may be confusing the stricter fact-pleading standards of the Pennsylvania Rules of Civil Procedure with the liberal pleading requirements of Rule 8(a).  See Pa. R. Civ. P. 1019(i) ("[W]hen any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof, but if the writing or copy is not accessible to the pleader, it is sufficient so to state, together with the reason, and to set forth the substance in writing.").

[2] 15 U.S.C. § 1692(e) provides that the purpose of this Act is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."

The Third Circuit has interpreted § 1692a(6) to mean that repossession agencies are subject to the FDCPA, but only for § 1692f(6) and not the remaining provisions of the statute. See Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227 (3d Cir. 2005) ("[E]ven though a person whose business does not primarily involve the collection of debts would not be a debt collector for purposes of the Act generally, if his principal business is the enforcement of security interests, he must comply with the provisions of the Act dealing with non-judicial repossession abuses.")  Specifically, courts have held that an "automobile repossession business was . . . subject to § 1692f(6), but not the remaining provisions of the FDCPA."  Id. (citing Jordan v. Kent Recovery Services, 731 F. Supp. 652 (D. Del. 1990).  Even though Plaintiff alleges violations under § 1692d, she cites to case-law concluding that this section would not be applicable to repossession agencies.  (Pl.'s Resp. to Def.'s Mot. to Dismiss Compl. at 6-7.)  Most notably, Plaintiff cites a Third Circuit case that found "[t]he FDCPA explicitly provides that 'any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests' may be held liable under § 1692f(6) of the FDCPA."  Stroh v. Director, OWCP, 810 F.2d 61, 63 (3rd Cir. 1987); Buzzell v. Citizens Automobile Fin., Inc., 802 F. Supp. 2d 1014, 1020 (D. Minn. 2011) ("[C]ourts in this district have plainly held that § 1692f(6) of the FDCPA does apply to repossession companies.").

Since Defendant CAC is a repossession agency, we must now decide whether Plaintiff has sufficiently pleaded a claim under the sole applicable provision of the FDCPA, § 1692f(6). (Compl. ¶ 6.)  §1692f(6) provides that the following conduct violates the FDCPA:

> (6) Taking or threatening to take any nonjudicial action to
> the effect of dispossession or disablement of property if-
>> (A) there is no present right to possession of the
>> property claimed as collateral through an
>> enforceable security interest;

7

(B) there is no present intention to take possession
of the property; or
(C) the property is exempt by law from such
dispossession or disablement.

15 U.S.C. § 1692f(6).  Here, the inquiry does not need to go very far as Plaintiff has admitted her

car was repossessed because she defaulted on her RISC.  (Compl. ¶¶ 11-12.)  Therefore,

Defendant CAC had a right of possession and was not in violation of §1692f(6)(A).

Additionally, Plaintiff does not plead any facts that suggest violations of §1692f(6)(B) or

§1692f(6)(C).  For these reasons, Plaintiff has not pleaded with sufficient facts a plausible claim

under 15 U.S.C. § 1692f(6).  We will allow Plaintiff fourteen days to file an Amended Complaint

if she so chooses to cure her deficiencies.[3]   However, we counsel Plaintiff that if she fails to file

an Amended Complaint within the fourteen days that we will dismiss the count with prejudice

for failing to state a claim from which relief can be granted.[4]

**2.  *Violations of the Uniform Commercial Code and the Pennsylvania Motor
Vehicles Sales Finance Act***

Next, Defendant CAC argues that Count II of Plaintiff's Complaint regarding violations

of the U.C.C., 13 Pa. C.S.A. § 9607 et seq., and the MVSFA, 69 P.S. § 615 et seq., should be

dismissed under 12(b)(6) because Plaintiff did not adequately allege a breach of the peace.

(Def.'s Mot. to Dismiss Compl. at 7-8.)  As a threshold matter, we note that Plaintiff cites the

---

[3] "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."
Alston v. Parker, 363 F.3d 229, 235-36 (3d Cir. 2004) (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108
(3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 115-16 (3d Cir. 2000)).

[4] The Third Circuit recommended a procedure for district courts to follow when dismissing complaints without
prejudice and suggested that "district judges expressly state, where appropriate, that the plaintiff has leave to amend
within a specified period of time, and that application for dismissal of the action may be made if timely amendment
is not forthcoming within that time. If the plaintiff does not desire to amend, he may file an appropriate notice with
the district court asserting his intent to stand on the complaint at which time an order to dismiss the action would be
appropriate." Borelli v. City of Reading, 532 F.2d 950, 951 n.1 (3d Cir. 1976).

incorrect statute in her Complaint.  Plaintiff is alleging a breach of the peace, which is a violation of 13 Pa. C.S.A. § 9609 et seq.  However, Plaintiff cites § 9607(c), which states the following:

> (c) Commercially reasonable collection and enforcement.  A secured party shall proceed in a commercially reasonable manner if the secured party:
>> (1) undertakes to collect from or enforce an obligation of an account debtor or other person obligated on collateral; and
>> (2) is entitled to charge back uncollected collateral or otherwise to full or limited recourse against the debtor or a secondary obligor.

13 Pa. C.S.A. § 9607(c).  Plaintiff specifically mentions a breach of the peace in both her Complaint and Response in Opposition to the Motion before us.  (Compl. ¶ 28; Pl.'s Resp. to Def.'s Mot. to Dismiss Compl. at 8-9.)  Plaintiff, also, references § 9609(b)(2) in her response. (Pl.'s Resp. to Def.'s Mot. to Dismiss Compl. at 8.)  Therefore, we will analyze whether Plaintiff has pleaded sufficient facts to state a plausible claim under § 9609 et seq.

13 Pa. C.S.A. § 9609 deals with a secured party's right to take possession after a default. A secured party can repossess collateral without judicial process if repossession can be accomplished without a "breach of the peace."  13 Pa. C.S.A. § 9609(b)(2).  Pennsylvania courts have not specifically defined what actions constitute a breach of the peace, and there is very little case-law interpreting a breach of the peace in the repossession context.  The case-law that exists does not help greatly in resolving the facts of this case since Plaintiff is arguing a breach of the peace occurred because her car was damaged in the course of the repossession.  Plaintiff makes no factual allegations that she was present at the repossession, that she made any oral objection at the scene of the repossession, that any law enforcement was involved in the repossession, that Defendant CAC trespassed while executing the repossession, or that Defendant CAC had to enter the subject vehicle with force.

These facts are critical as all of the Pennsylvania cases before us dealt with issues at the scene of the repossession.  See Stewart v. North, 65 Pa. Super. 195, 201(1916) (breaking a window to unlock a door to a residence to repossess a piano was a "breach of the peace"); Laurel Coal Co. v. Walter E. Heller & Co., Inc., 539 F. Supp. 1006, 1007 (W.D. Pa. 1982) (holding that an "actual breaking of a lock or fastener securing property, even commercial property, constitutes a 'breach of the peace'"); Jackson v. Richards 5 & 10, Inc., 433 A.2d 888, 895 n.11 (1981) (holding the "use of law enforcement agents in repossessions itself creates a constructive breach of the peace"); Rodriguez v. Mellon Bank, N.A., 218 B.R. 764, 781 (Bankr. E.D. Pa.1998) (using locksmith was considered a breach of the peace because, even though it was peaceful, there was still a breaking and entering).

Having no binding precedent on point, we will now look to other sources for guidance. Plaintiff cites the classic definition of a breach of the peace as "a violation of the public order, a disturbance of tranquility, by an act or conduct inciting to violence or tending to provoke or excite others to break the peace."  (Pl.'s Resp. to Def.'s Mot. to Dismiss Compl. at 8); E. Mikolajcyk, Breach of Peace and Section 9-503 of the UCC – Modern Definition for an Ancient Restriction, 82 Dick.L.Rev.351 (1981) (quoting Anderson Wharton's Criminal Law & Procedure § 802 (1957)).

Some jurisdictions have adopted a balancing test and consider the following five factors when making a determination if there has been a breach of the peace: 1) where the repossession took place; 2) the debtor's express or constructive consent; 3) the reactions of third parties; 4) the type of premises entered; and 5) the creditors' use of deception.  See Clarin v. Minn. Repossessors, 198 F.3d 661, 664 (8th Cir. 1999); Giles v. First Va. Credit Serv., 560 S.E.2d 557, 565 (N.C. Ct. App. 2002); Davenport v. Chrysler Credit Corp., 818 S.W.2d 23, 29 (Tenn. Ct.

App. 1991).  However, most jurisdictions make determinations of what constitutes a breach of the peace on a case by case basis.  Although their findings vary, courts consistently look to the following factors to determine if there was a breach of the peace: the use of law enforcement; violence or threats of violence; trespass; verbal confrontation; and disturbance to third parties.[5]

We have not been provided with, nor could we locate, a case holding that there was a breach of the peace when a vehicle was repossessed on a public street without objection or confrontation.  Chapa v. Traciers & Assocs., 267 S.W.3d 386, 395 (Tex. Ct. App. 2008). (discussing how the court has "not found any case in which the repossession of a vehicle from a public street, without objection or confrontation, has been held to constitute a breach of the peace").  Jurisdictions that do not have a set of factors to consider when determining whether there has been a breach of the peace, like Pennsylvania, focus almost entirely between the interactions of the debtor and creditor at the time of repossession, such as force or threats of force, trespass, or verbal objections.  See generally Id.; Jordan v. Citizens & S. Nat'l Bank of S., 298 S.E.2d 213 (S.C. 1982); Martin v. Cook, 114 So. 2d 669, 671 (1959) (holding under Mississippi law, "[t]he principal test [for breach of the peace] is whether the repossession was peaceable, or required the use of force or threats as to the buyer or his representative); Northside Motors of Fla., Inc. v. Brinkley, 282 So. 2d 617, 624 (Fla. 1973) (holding that under Florida law, the test to determine whether a breach of the peace has occurred is whether there was entry by the creditor upon the debtor's premises; and whether the debtor or one acting on his behalf

---

[5] See Walker v. Walthall, 588 P.2d 863, 865 (Ariz. 1978) (holding that the mere presence of a uniformed deputy sheriff at the site of repossession constituted a breach of the peace); Ford Motor Credit Co. v. Herring, 589 S.W.2d 584, 586 (Ark. 1979) (holding that a breach of the peace occurs when "force, or threats of force, or risk of invoking violence, accompanie[s] their possession"); Butler v. Ford Motor Credit Co., 829 F.2d 568, 570 (5th Cir. 1987) (upholding district court's ruling that peaceful entry onto a debtor's land without his permission, but without physical objection or intrusion into a dwelling or garage, was not a breach of the peace); United States v. Alexander, 573 F.3d 465, 475 (7th Cir. 2009) (focusing on whether the debtor objected to the repossession at the scene in its determination if there was a breach of the peace).

consented to the entry and possession); <u>Chrysler Credit Corp. v. Koontz</u>, 661 N.E.2d 1171, 1173,

1174 (Ill. App. Ct. 1996) (deciding whether breach of the peace occurred "at the time of or

immediately prior to repossession"); <u>Fulton v. Anchor Sav. Bank, F.S.B.</u>, 452 S.E.2d 208, 213

(1994) (a breach of the peace is created by an unequivocal oral protest).

      The cases of <u>Chapa</u> and <u>Jordan</u> illustrate this methodology.  In <u>Chapa</u>, a repossession

agent, hired by a secured creditor, repossessed a vehicle from a public street when the driver was

absent.  267 S.W.3d at 389.  Unknown to the repossession agent at the time, the debtor's two

children were in the back seat of the car when he drove it away.  <u>Id.</u>  The agent quickly realized

the presence of the children and immediately returned the vehicle to the debtor.  <u>Id.</u>  The court

held there was not a breach of the peace because:

> there [was] no evidence that Chambers proceeded with the
> attempted repossession over an objection communicated to him at,
> *near, or incident to the seizure of the property*. To the contrary,
> Chambers immediately 'desisted' repossession efforts and
> peaceably returned the vehicle and the children when he learned of
> their presence. Moreover, Chambers actively avoided
> confrontation. By removing an apparently unoccupied vehicle from
> a public street when the driver was not present, he reduced the
> likelihood of violence or other public disturbance.

<u>Id.</u> at 395 (emphasis added).  The court made no consideration of the harm done after the

repossession had taken place.  <u>Id.</u>

      The South Carolina court in <u>Jordan</u> used similar reasoning.  In <u>Jordan</u>, a repossession

agent was hired by a bank to repossess a truck from a debtor who was in default.  298 S.E.2d at

213.  The agent found the vehicle with the keys in it and began to drive it away from the debtor's

driveway.  <u>Id.</u>  The debtor saw their vehicle driving down the street and began to follow the

vehicle because he believed it was being stolen.  <u>Id.</u> at 213-14.  The plaintiff alleged that agent

"exceeded the speed limit, failed to observe traffic signals and drove recklessly."  Id. at 214.  The court held:

> We are not at all sure that the alleged violations of the traffic laws amounted to a breach of the peace, but even if it be assumed that they did, the conduct was not incident to seizing the truck at the residence of the [debtors].  The breach of the peace as contemplated by the statute and our cases refers to conduct at or near and/or incident to the seizure of the property.

Id.  Again, the courts main focus was on the conduct that occurred near or incident to the actual seizure.

The Pennsylvania case-law, as discussed above, has been following a consistent pattern with a similar focus as Chapa and Jordan, Pennsylvania courts have put an emphasis on the events that occur at the scene of the repossession, and how the secured party gained access to the real estate upon which the collateral was maintained.  See Stewart, 65 Pa. Super. 195; Laurel Coal, 539 F. Supp. 1006; Jackson, 433 A.2d 888; Rodriguez, 218 B.R. 764.  We predict that the Pennsylvania Supreme Court would not interpret that the damage to Plaintiff's vehicle, as set forth in the Complaint, constitutes a breach of the peace for purposes of § 9609.[6]  Plaintiff has not pleaded any factual allegations indicating that anything happened at the moment of actual repossession.[7]  This is a critical flaw in Plaintiff's Complaint as courts in other jurisdictions have

---

[6] In interpreting state law, federal courts are bound by the decisions of the state's highest court.  Wirth v. Aetna U.S. Healthcare, 469 F.3d 305, 309 (3d Cir. 2006).  When there is a novel question of law and no controlling precedent on the issue, courts must "predict how the highest state court would rule."  Id. (quoting Rolick v. Collins Pine Co., 925 F.2d 661, 664 (3d Cir. 1991)).

We will note that in Plaintiff's opposition to the Motion before us, she claims a collision caused the damage to the subject vehicle; however, the Complaint makes no mention of a collision and simply states the vehicle was damaged due to improper towing.  (Compl. ¶¶ 14-15; Pl.'s Resp. to Def.'s Mot. to Dismiss Compl. at 8-9.)

[7] As nonbinding precedent, we decline to follow the Florida First District Court of Appeal case of Quest v. Barnett Bank of Pensacola that Plaintiff cites in her response.  397 So.2d 1020 (Fla. Dist. Ct. App. 1981).  Plaintiff cites this case for the proposition that, under Quest, damage to property during the course of a repossession can constitute a breach of the peace.  (Pl.'s Resp. to Def.'s Mot. to Dismiss Compl. at 8 n.1.)  However, Quest largely dealt with whether the debtor gave proper consent to a creditor to enter her premises to seize the property that was in default.  Id. at 1022-24.  The court did note that a breach of the peace can occur if "the secured party damages property of the debtor while affecting repossession."  Id. at 1024 (citations omitted).  However, the court was not clear by what

consistently focused on the interaction between the creditor and the property or debtor at, near, or incident to the actual seizure of the property.

No case-law suggests that Pennsylvania would be willing to extend what constitutes a breach of the peace to situations, like the one before us, involving damage that occurred not incident to the actual seizure.  Plaintiff has not pleaded any facts indicating that she, or anyone, was present at the scene, that Defendant CAC used force or threats of force, that Defendant CAC trespassed, or that Defendant CAC used law enforcement.  Therefore, Plaintiff has not sufficiently pleaded a plausible claim for a breach of the peace under § 9609.  The recourse for this type of allegation is more appropriately brought as a negligence action, which Plaintiff has already done so in Count IV of her Complaint.  For the same reasons as discussed above, we will allow Plaintiff fourteen days to file an Amended Complaint if she so chooses to cure its deficiencies.

### C.  Motion to Strike Plaintiff's Prayer for Relief

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  A demand for damages that is not recoverable as a matter of law may be stricken pursuant to Rule 12(f). Seippel v. Jenkens & Gilchrist, P.C., 341 F. Supp. 2d 363, 383 (S.D. N.Y. 2004) (footnote omitted); Shabaz v. Polo Ralph Lauren Corp., 586 F. Supp. 2d 1205, 1208–09 (C.D. Cal. 2008) (citations omitted).

Defendant CAC argues that parts A, B, D, E, and G of Plaintiff's Prayer for Relief must be stricken because these damages are not recoverable against it.  Plaintiff concedes in her

---

it meant by "affecting repossession" and whether this constituted damage done outside the incident of actual repossession.  We also have not been presented with, nor could we locate, any case-law that relied on Quest to find a creditor liable for a breach of the peace for damaging property away from the actual scene of repossession.  Based on this and its deviation from the more consistent holdings of other courts, we decline to follow Quest.

proposed Order attached to her Response that we should strike Section A's references to the
UTPCPL and FCEUA and Section G as to Defendant CAC.  Thus, to the extent that Defendant
CAC's Motion asks us to strike these various prayers for relief, it will be granted.  Plaintiff has
not addressed Defendant CAC's remaining arguments.  Thus, we will also grant Defendant
CAC's Motion without prejudice as it pertains to striking Section B, statutory damages pursuant
to 15 U.S.C. § 1692k, Section E, damages under the U.C.C., and Section D, reasonable attorney
fees and costs.[8]  Again, Plaintiff will have fourteen days to file an Amended Complaint if she so
chooses to cure her deficiencies.

IV.    **CONCLUSION**

For the aforementioned reasons, we grant Defendant CAC's Motion by agreement to the
following:  dismissal of Count III; paragraphs 41 and 49 are stricken from the Complaint;
Section A's references to the UTPCPL and FCEUA are stricken; and Section G of Plaintiff's
Prayer for Relief is stricken as to Defendant CAC.  We, also, grant Defendant CAC's Motion
and dismiss without prejudice Count I and Count II of Plaintiff's Complaint for failing to state a
claim.  Additionally, Sections B, D, and E of Plaintiff's Prayer for Relief are stricken without
prejudice.  As noted, we will allow Plaintiff fourteen days to properly amend her Complaint.  We
caution Plaintiff to carefully follow the guidelines set forth in this Opinion, or her claim may be
dismissed without leave to amend.

An appropriate Order follows.

---

[8] Sections B and E are stricken as we have found that Plaintiff has failed to adequately allege, as a matter of law, a
plausible claim for the corresponding statutes.  Section D is stricken because attorney fees are not recoverable absent
express authority, agreement of the parties or some other established exception.  Mosaica Acad. Charter Sch. v.
Commw., 813 A.2d 813, 822 (Pa. 2002).  Plaintiff's Complaint fails to allege one of these sources of recovery.